1   Jonathan D. Selbin (State Bar No. 170222)
    jselbin@lchb.com
2   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA 94111
    Telephone: 415-956-1000
4   Facsimile: 415-956-1008

5   [Additional attorneys listed on signature page]

6   *Attorneys for Plaintiffs and the proposed Class*

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  RYAN JENKINS, YAMET GARCIA, and          **Case No. 3:17-cv-5864-WHA**
    CARL WILLIAMS, on behalf of
12  themselves and all others similarly situated,   **AMENDED CLASS ACTION COMPLAINT**

13                    Plaintiffs,              for**:**

14  v.                                        (1)   Violations of California Consumer Legal
                                                    Remedies Act
15  GENERAL MOTORS COMPANY;                   (2)   Violations of California Unfair
                                                    Competition Law
16                    Defendant.              (3)   Breach of Express Warranty Pursuant to
                                                    Song-Beverly Consumer Warranty Act
17                                            (4)   Breach of Express Warranty
                                              (5)   Breach of Express Warranty –
18                                                  Magnuson-Moss Warranty Act
                                              (6)   Breach of Implied Warranty Pursuant to
19                                                  Song-Beverly Consumer Warranty Act
                                              (7)   Breach of Implied Warranty
20                                            (8)   Breach of Implied Warranty –
                                                    Magnuson-Moss Warranty Act
21                                            (9)   Fraud by Concealment
                                              (10)  Unjust Enrichment
22

23                                            **JURY TRIAL DEMANDED**

24                          **INTRODUCTION**

25         1.     Plaintiffs Ryan Jenkins, Yamet Garcia, and Carl Williams bring this action for

26  themselves and on behalf of all persons who purchased or leased in California certain vehicles

27  equipped with uniform and uniformly defective air conditioning Systems designed, manufactured,

28

1381385.2

1  distributed, and sold/leased by General Motors Company and/or its related subsidiaries or

2  affiliates ("GM"), as further described below ("Class Members").

3      2.     The vehicles at issue in this action include the 2015-2017 Cadillac Escalade, 2014-

4  2016 Chevrolet Silverado 1500, 2015-2017 Chevrolet Suburban, 2015-2017 Chevrolet Tahoe,

5  2014-2016 GMC Sierra 1500, and 2015-2017 GMC Yukon (the "Class Vehicles").

6      3.     These Class Vehicles' air conditioning systems ("AC Systems") have a serious

7  defect that causes the AC Systems to (a) crack and leak refrigerant; (b) lose pressure within the

8  AC System; and (c) fail to properly function to provide cooled air into the Vehicle's passenger

9  cabin (the "AC System Defect").

10      4.     On information and belief, the AC System is substantially the same, from a

11  mechanical engineering standpoint, in all Class Vehicles, in that the AC Systems in all Class

12  Vehicles are made up of substantially the same components and all employ the same general

13  mechanism to deliver cooled air to the passenger cabin.

14      5.     The AC System in the Class Vehicles is defective because it is insufficiently

15  strong and durable to perform its intended function – providing cooled air into the passenger

16  cabin of the Vehicle – and to withstand the internal pressures and external forces that the System

17  encounters during normal and expected use and conditions.

18      6.     The AC System failure can first occur at low mileages, within the 36,000 mile

19  New Vehicle Express Warranty period.

20      7.     Because of the high number of failures, AC System replacement parts are on

21  national backorder and the wait for replacement parts is long – often many months – during

22  which time Plaintiffs and Class Members must suffer without a functioning AC System in their

23  Vehicles.

24      8.     Moreover, GM's replacement of faulty AC System components with equally

25  defective replacement parts leaves the AC System susceptible to repeated failure and thus does

26  not permanently remedy the AC System Defect.

27      9.     When the AC System fails outside of the warranty period, consumers are forced to

28  pay between $150 and $2000 out of pocket to repair their AC Systems with the same defective

1  parts, and still are subjected to the same long wait times for backordered parts. The long wait

2  times for backordered GM parts meant many consumers were forced to buy aftermarket

3  replacement parts because there was no timeline for when GM parts would be available.

4       10.    The AC System Defect inhibits Plaintiffs and Class Members' expected,

5  comfortable, and safe use of their Vehicles, and requires Class Members to go months without

6  functioning AC Systems while waiting for replacement parts, and to pay for equally defective

7  replacement parts that themselves are susceptible to failure.

8       11.    The AC System Defect creates a safety risk for Plaintiffs and Class Members

9  because AC System failure subjects the occupants of the Vehicles to unsafely high temperatures

10  and can lead to decreased visibility due to fogging of the windows and an inability to use the AC

11  System to de-fog the windows.

12       12.    On information and belief, prior to sale or lease of the Vehicles at issue, GM knew

13  of the AC System Defect through sources such as pre-release evaluation and testing; repair data;

14  replacement part sales data; early consumer complaints made directly to GM, collected by the

15  National Highway Transportation Safety Administration's Office of Defect Investigation

16  ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done in response

17  to those complaints; aggregate data from GM dealers; and other internal sources. Yet despite this

18  knowledge, GM failed to disclose and actively concealed the AC System Defect from Class

19  Members and the public, and continued to market and advertise the Class Vehicles as "reliable,"

20  "durable," with "functional," "customer-focused" interior AC Systems, which they are not.

21       13.    GM has failed to provide a permanent in-warranty fix for the Defect within a

22  reasonable time, forced Class Members to wait unreasonable lengths of time for repairs, and/or

23  pay out-of-pocket to replace broken AC System components with equally defective replacement

24  parts.

25       14.    As a result of GM's alleged misconduct, Plaintiffs and Class Members were

26  harmed and suffered actual damages, including that the Class Vehicles contain defective AC

27  Systems, have manifested, and continue to manifest, the AC System Defect, and that GM has not

28  provided a permanent, no-cost remedy for this Defect within a reasonable amount of time.

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

Furthermore, Plaintiffs and Class Members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the AC System Defect.

**PARTIES**

*Plaintiff Ryan Jenkins*

15.     Plaintiff Ryan Jenkins resides in Antioch, California.

16.     Mr. Jenkins owns a 2014 GMC Sierra, which he purchased new in or around May 2014, from Lehmer's Concord Buick GMC, in Concord, California. Mr. Jenkins's Class Vehicle was designed, manufactured, distributed, advertised, marketed, warranted, and certified by GM.

17.     Mr. Jenkins purchased his Class Vehicle for his personal, family, and household use.

18.     In or around February 2015, Mr. Jenkins's Vehicle's AC System failed. At the time, the Vehicle had 36,500 miles on it.

19.     Mr. Jenkins took his Vehicle back to his dealership, Lehmer's, to report the AC System failure. The dealership told Mr. Jenkins it would cost $200 to run a diagnostic test on the AC System, but that even without the diagnostic test the dealership could tell Mr. Jenkins that the AC System condenser had cracked causing the failure, and that it was a known problem.

20.     The dealership told Mr. Jenkins it would cost $1500 to replace the condenser. The repair would not be covered under warranty because the failure occurred just 500 miles past the New Vehicle Limited Warranty limit of 36,000 miles; "so close!" as the dealership said to Mr. Jenkins. The dealership also told Mr. Jenkins the repair could not be done immediately because the condenser part was backordered nationwide.

21.     In or around February 2015, Mr. Jenkins lodged an official complaint about his AC System's failure with a regional specialist at GM Corporate, but did not receive any response to his complaint.

22.     In fall 2016, Mr. Jenkins contacted GM's buyback division to ask that they buy back his vehicle, since Mr. Jenkins was fed up with the problems with his Vehicle, including the AC System failure. After his request was "under review" for three or four months, GM finally informed Mr. Jenkins in September 2017 that GM would not buy back Mr. Jenkins's Vehicle.

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

23.     During these many months that his Vehicle's AC System was broken and failed to produce cool air, Mr. Jenkins was forced to either suffer through driving his Vehicle in the California heat without a functional AC System, or to drive another vehicle because driving without AC was unbearable.

24.     Mr. Jenkins paid $150 out of pocket to purchase a replacement condenser for his Vehicle.

25.     Mr. Jenkins expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know of, or expect, that his Vehicle's AC System would crack, leak refrigerant, lose pressure, and fail to function, nor was he aware from any source prior to purchase of the unexpected, costly, and backordered repairs he would have to make on his Vehicle's AC System simply to have it function. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

26.     Mr. Jenkins regularly saw advertisements for GM vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Class Vehicle in 2014. Although he does not recall the specifics of the many GM advertisements he saw before he purchased his Class Vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase his Vehicle. Had those advertisements or any other GM materials disclosed to Mr. Jenkins that the Class Vehicles had defective AC Systems, or that he would have to pay for repairs/replacement of the AC System, he would not have purchased his Class Vehicle, or would have paid less for it.

*Plaintiff Yamet Garcia*

27.     Plaintiff Yamet Garcia resides in Chula Vista, California.

28.     Mr. Garcia owns a 2015 Chevrolet Silverado, which he purchased new in June 2015 from Bob Stall Chevrolet in La Mesa, California.

29.     Mr. Garcia's Class Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by GM, and bears the Vehicle Identification No. 3GCPCREC3FG266615.

30.     Mr. Garcia purchased his Class Vehicle primarily for his personal, family, and household use.

31.     On or around September 7, 2017, Mr. Garcia's Vehicle's AC System failed. At the time, his Vehicle had just around 42,000 miles on it.

32.     On or about September 11, 2017, Mr. Garcia took his Vehicle to Bob Stall Chevrolet to complain about the AC System failure. The dealership told Mr. Garcia that the condenser needed to be replaced, and that this would cost Mr. Garcia $1280.

33.     On October 13, 2017, Mr. Garcia took his Vehicle to Bob Stall Chevrolet to have the condenser replaced. He complained that he did not feel he should be charged $1280, and ultimately the repair was done as a "warranty" repair per "GM policy," so Mr. Garcia paid $100 instead of the original quoted amount.

34.     Mr. Garcia expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know of, or expect, that his Vehicle's AC System would leak refrigerant, lose pressure, and fail to function, nor was he aware from any source prior to purchase of the unexpected, costly, and backordered repairs he would have to make on his Vehicle's AC System simply to have it function. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

35.     Mr. Garcia regularly saw advertisements for GM vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Class Vehicle in June 2015. Although he does not recall the specifics of the many GM advertisements he saw before he purchased his Class Vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase his Vehicle. Had those advertisements or any other GM materials disclosed to Mr. Garcia that the Class Vehicles had defective AC Systems, or that

1   he would have to pay for repairs/replacement of the AC System, he would not have purchased his

2   Class Vehicle, or would have paid less for it.

3       *Plaintiff Carl Williams*

4       36.     Plaintiff Carl Williams resides in Thousands Oaks, California.

5       37.     Mr. Williams owns a 2014 Chevrolet Silverado, which he purchased in November

6   2015 from Paradise Chevrolet in Ventura, California.

7       38.     Mr. Williams's Class Vehicle was designed, manufactured, sold, distributed,

8   advertised, marketed, and warranted by GM.

9       39.     Mr. Williams purchased his Class Vehicle primarily for his personal, family, and

10  household use.

11      40.     On or around January 30, 2017, Mr. Williams noticed a leak of fluid from his

12  Vehicle, which he later learned was refrigerant. Mr. Williams took his Vehicle to Silver Star

13  Chevrolet in Thousand Oaks, California, to complain about the leak but the dealership said there

14  was no leak.

15      41.     On or around February 4, 2017, Mr. Williams's Vehicle's AC System failed. At

16  the time, his Vehicle had just around 19,000 miles on it. Mr. Williams took his Vehicle back to

17  Silver Star to complain about the AC System failure. The dealership found that the AC System

18  had cracked and leaked refrigerant. The repair service on Mr. Williams's Vehicle was covered by

19  GM under warranty.

20      42.     On or around June 1, 2017, Mr. Williams's Vehicle's AC System failed again. At

21  the time the Vehicle had around 23,912 miles on it. Mr. Williams again took his Vehicle to Silver

22  Star to complain that the AC System had failed again. The dealership again found the AC System

23  had cracked and leaked refrigerant. However, because the dealership had run out of the

24  replacement parts, Mr. Williams had to wait over a week – with no functioning AC in a California

25  heat wave – before his Vehicle could be repaired. Mr. Williams's Vehicle was still under

26  warranty and so the second repair service on Mr. Williams's Vehicle was covered by GM.

27      43.     Mr. Williams expected his Class Vehicle to be of good and merchantable quality

28  and not defective. He had no reason to know of, or expect, that his Vehicle's AC System would

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

1  leak refrigerant, lose pressure, and fail to function, nor was he aware from any source prior to

2  purchase of the unexpected, backordered, and repeated repairs he would have to make on his

3  Vehicle's AC System simply to have it function. Had he known these facts, he would not have

4  bought his Class Vehicle or would have paid less for it.

5      44.    Mr. Williams regularly saw advertisements for GM vehicles on television, in

6  magazines, on billboards, in brochures at the dealership, and on the Internet during the years

7  before he purchased his Class Vehicle in November 2015. Although he does not recall the

8  specifics of the many GM advertisements he saw before he purchased his Class Vehicle, he does

9  recall that state-of-the-art engineering and a comfortable interior were frequent themes across the

10 advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable

11 interior influenced his decision to purchase his Vehicle. Had those advertisements or any other

12 GM materials disclosed to Mr. Williams that the Class Vehicles had defective AC Systems, or

13 that he would have to have repeated repairs to the AC System simply to keep it functioning, he

14 would not have purchased his Class Vehicle, or would have paid less for it.

15     *Defendant General Motors Company*

16     45.    Defendant General Motors Company ("GM") is a Delaware corporation, which

17 has its principal place of business in the State of Michigan, and is a citizen of the States of

18 Delaware and Michigan.

19     46.    General Motors Company is the sole member and owner of General Motors

20 Holdings LLC.

21     47.    General Motors Holdings LLC is a Delaware limited liability company with its

22 principal place of business in the State of Michigan.

23     48.    General Motors Holdings LLC is the sole member and owner of General Motors,

24 LCC.

25     49.    General Motors, LLC is a foreign limited liability company formed under the laws

26 of Delaware with its principal place of business located at 300 Renaissance Center, Detroit,

27 Michigan. General Motors, LLC was incorporated in 2009 and, effective on July 10, 2009,

28

-8-

1   acquired substantially all assets and assumed certain liabilities of General Motors Corporation

2   through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

3        50.     At all times relevant herein, Defendant General Motors Company (itself and

4   through its related entities) engaged in the business of designing, manufacturing, marketing,

5   warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles,

6   in California and throughout the United States.

7   **JURISDICTION**

8        51.     This Court has federal question jurisdiction over this action under 28 U.S.C.

9   § 1331 because this case includes claims arising under federal law.

10        52.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C.

11   §1332(d) and the Class Action Fairness Act because the amount in controversy for the Class

12   exceeds $5,000,000, and Plaintiffs and other Class Members are citizens of different states than

13   Defendant.

14        53.     This Court has personal jurisdiction over GM because GM is authorized to do

15   business in this District, conducts substantial business in this District, and some of the actions

16   giving rise to this Complaint took place in this District. Moreover, this suit arises out of, or relates

17   to, Defendant's contacts with California.  Each of these facts independently, but also all of these

18   facts together, are sufficient to render the exercise of jurisdiction by this Court over GM

19   permissible under traditional notions of fair play and substantial justice.

20   **VENUE**

21        54.     Venue is proper in this District under 28 U.S.C. § 1391 because GM is deemed to

22   reside in any judicial district in which it is subject to personal jurisdiction. Additionally, GM

23   transacts business within this District, and some of the events establishing the claims at issue here

24   arose in this District.

25        55.     Plaintiffs' venue declarations pursuant to Cal. Civ. Code § 1780(d) are attached

26   hereto as Exhibits A, B, and D.

27

28

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

1381385.2

1

**APPLICABLE LAW**

2      56.     Plaintiffs and all Class Members purchased or leased their Class Vehicles in

3   California, and seek damages and equitable relief for themselves and all Class Members under

4   California law.

5      57.     California has a materially greater interest than any other state in enforcing the

6   rights and remedies granted to consumers under the California laws invoked in this Complaint.

7   These rights and remedies further the strong fundamental public policies of the State of

8   California.

9

**FACTUAL ALLEGATIONS**

10      58.     Plaintiffs are informed and believe that, because of the AC System Defect, the AC

11  Systems in the Class Vehicles are predisposed to leak refrigerant, lose pressure, and fail to

12  function under normal-use conditions that would not cause non-defective AC Systems fail,

13  compromising the comfort, safety, and enjoyment of Vehicle occupants, including Class

14  Members, and requiring them to wait unreasonable amounts of time for repairs and pay out-of-

15  pocket to replace broken AC System parts with equally defective replacement parts, leaving their

16  AC Systems susceptible to repeated failures.

17      //

18      //

19      //

20      //

21      //

22      //

23      //

24      //

25      //

26      //

27      //

28      //

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

1381385.2

1

**I.    The AC System Defect.**

2    59.    The AC System in the Class Vehicles is a pressurized, self-contained system

3   composed of three main components: the compressor, the condenser, and the evaporator, which

4   are connected by hoses and lines to each other. A generalized diagram of the type of air

5   conditioning system found in the Class Vehicles is below, with component parts labeled and

6   refrigerant flow path and temperature indicated by colored arrows.

7

8

9

10

11

12

13

14    

15

16

17

18

19

20

21

22    60.    A chemical refrigerant flows through the AC System, alternating between a liquid

23   and a gas depending on the pressure it is subjected to in the various components it flows through

24   during its continuous cycle through the System.

25    61.    The compressor is responsible for compressing the refrigerant gas. Compression

26   causes the refrigerant to get very hot. The hot, compressed refrigerant gas is then sent through the

27   condenser.

28

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

62.     The condenser is a series of coils that outside air passes over to remove the heat from the compressed refrigerant gas. This causes the refrigerant gas to cool and condense into a cold liquid. The cold liquid refrigerant then passes through the receiver-drier, a canister containing desiccant to absorb moisture, and then through an expansion valve to change it from a high-pressure liquid to a low-pressure liquid mist before entering the evaporator.

63.     The evaporator is an array of tubes that the refrigerant liquid mist flows through, chilling the tubes. As the low-pressure liquid refrigerant mist flows through the evaporator, a blower motor pushes air across the cold tubes of the evaporator to deliver cooled air into the passenger compartment of the automobile.

64.     The AC System is entirely sealed off and must remain so in order to maintain the pressures necessary to allow the System to function properly and produce cooled air for the passenger cabin.

65.     On information and belief, the AC System is not sufficiently strong and durable to withstand the internal pressures and external forces the System can be expected to encounter under normal use and conditions. This insufficiency leads to System parts cracking, which allows refrigerant to leak out of the System and causes the System to lose pressure, which results in failure of the AC System to produce cool air.

66.     GM knew or should have known that having insufficiently strong and durable AC System components could lead to cracking, refrigerant leaks, lost pressurization, and AC System failure under normal use and conditions.

67.     The AC System failure can first occur at low mileages, within the warranty period.

68.     Because of the high number of failures, AC System replacement parts are on national backorder and the wait for replacement parts is long – often many months – during which time Plaintiffs and Class Members must suffer without a functioning AC System in their Vehicles.

69.     Moreover, GM's replacement of faulty AC System components with equally defective replacement parts leaves the AC System susceptible to repeated failure and thus does not permanently remedy the AC System Defect.

70.     When GM refuses to cover the cost to repair the AC System, consumers are forced to pay between $150 and $2000 out of pocket, yet the repair is done with the same defective GM parts, and consumers still are subjected to the same long wait times for backordered parts.

**II.     The AC System Defect Poses A Safety Risk to Vehicle Drivers and Occupants.**

71.     The AC System Defect poses a safety risk to Vehicle occupants because a Vehicle with a non-functioning AC System subjects occupants to unsafely high temperatures, and can create a visibility issue if windows fog up and cool air from the AC System is not available to de-fog the windows.

72.     Numerous GM owners and absent Class Members have told NHTSA, and GM directly, that the AC System Defect poses a safety risk, as illustrated by the following examples:[1]

> "I was informed that the [2015 Chevrolet Tahoe] air condenser is a faulty part and is not working on my vehicle. Also, GM has knowledge of this issue, for it is a known issue with Chevrolet Tahoe. The part to fix this problem is on back order, and there are no parts in production, for they have not come up with a remedy to replace the faulty part. Therefore, I do not have air conditioning within my vehicle. Thus, **causing a safety issue, for it is 90 degrees where I live, and I have infant twins** that are transported with my vehicle." http://www.carproblemzoo.com/chevrolet/tahoe/air-conditioner-problems.php (posted May 2017)

> "I have been waiting to get my [2014 GMC Sierra 1500 Sierra 15500 Denali 6.2L] air conditioner fixed now for months and I keep getting told there are no Condensers available. I have talked with service writers at GM dealership's well as other Sierra owners and they all have the same problem for the most part. This needs to be put on a recall list or I have decided to file a class action lawsuit in this matter regarding all Sierra owners across the country. I, as well as I am sure other people, have **serious breathing issues in hot weather** and need my truck fixed promptly..." http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (posted May 2016)

> "I have been a GMC Customer since 1976 and have purchased a total of six new trucks over the years. … SO when I laid down over 50K I expected it to be something I could feel good about driving & never expected it to be a death trap that would be best used as a boat anchor for the cargo ships carrying imported vehicles. This [2014 GMC Sierra 1500 LX 5.3L] Model Year is **unsafe** and should not have been made available until it had been properly tested and **GMC should be more focused on the safety of the Customer** …. At just over 36k miles 36500 my A/C suddenly started blowing hot air. I had just had it serviced by the dealership and not sure what caused the problem. … This is something that GMC

---

[1] For these and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

should be covering. … I called GMC and began the formal complaint process and was pretty much blown off and haven't heard anything back from them. **With the amount of money I paid for this truck should be safe and comfortable and have something of value**. I feel like I have been taken for my money and want what I paid for…"

http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (posted September 2016)

"I need my [2015 Chevrolet Tahoe LT 3.2L V6] air fixed bad. It's entirely **too hot to be riding around with no cooling system** and defrost. I've only had vehicle for 1yr."

http://www.carcomplaints.com/Chevrolet/Tahoe/2015/AC_heater/ac_stopped_working.shtml (posted June 2017)

"GM condenser issue. GM has a known issue with 2014-2016 [Chevrolet Tahoe] models using a defective condenser. They have a new part# that is on national backorder and are unwilling to do anything for their customers waiting for the part. I was driving down the freeway, kids in tow, on a rainy muggy day ... **My windshield began to fog and with no condenser to run the AC I was unable to [de-fog] my windows**. Unable to see a thing I had to pull over, on the freeway, carefully, and find a child's coat in the very back to wipe down the windows to [create] visibility. **This is a safety issue** and clearly negligence on GM's part and they would be held liable if/when **this creates a serious accident**."

NHTSA ODI 10994971 (incident date June 13, 2017)

"I'm a frustrated customer with a 2015 Chevy Suburban looking for some assistance with the air condenser on my vehicle. I have gone almost 2.5 months without a/c and I am incredibly disappointed to be have been going so long without something as basic as a/c. I have 3 small children and it's incredibly uncomfortable in the vehicle now that it's summer temperatures… On an unexpectedly cool day like today with outdoor temps at 67 the driver side foot area is 98 degrees because of hot air blowing which I assume comes from the engine. I shut off all the vents and fans and it still blows. On days when it's warmer that floor temp is more like 114-118 degrees and it's causing pain and burning sensation to my feet. I've contacted my dealership and they offered me to end my lease early and get into a new suburban. I've been so disappointed with the way this has been handled. I have never been so unsatisfied as customer for such a long period of time. I feel like I should be reimbursed for the two visits for diagnostics on the vehicle to find out why the a/c wasn't working and the rental car I needed. I also feel like I shouldn't have to be paying my lease payments for a faulty vehicle for the last few months that it hasn't been functioning properly. Lastly, I would like the option of ending my lease early without penalty to get into a more comfortable vehicle of my choice. I've contacted GM customer service only to be told there's nothing they can do unless GM decides that this should be a recall. Frankly, this is a problem amongst many vehicles in the GM line. This is frustrating and is really **becoming a safety issue as temperatures rise. I am genuinely concerned for my family's safety** and I am **frustrated with the overall lack of urgency on this issue**."

NHTSA ODI 11001813 (incident date March 23, 2017).

### III.  GM Knew of the AC System Defect Prior to Sale or Lease of the Class Vehicles

73.  On information and belief, GM learned of the AC System Defect at least as early as 2013, and certainly well before Plaintiffs and Class Members purchased or leased their Class

Vehicles, through sources such as pre-release evaluation and testing; investigations leading to dealer service bulletins; repair data; replacement part sales data; early consumer complaints made directly to GM, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from GM dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

A.  **GM's Knowledge of the AC System Defect Gained from Pre-Release Design, Manufacture, Engineering, and Testing Data**

74.  During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, GM necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's AC Systems, particularly the basic engineering principles behind the construction and function of the Systems and the expected conditions and uses the Systems would encounter in ordinary customer service.

75.  An adequate pre-release analysis of the design, engineering, and manufacture of the AC Systems in the Class Vehicles would have revealed to GM that the AC Systems were defective and susceptible to cracking, leaking refrigerant, and failing to provide cool air into the passenger cabin.

B.  **GM's Knowledge of the AC System Defect from Technical Service Bulletins**

76.  GM's knowledge of the AC System Defect is demonstrated by Technical Service Bulletins ("TSB") issued by GM concerning the Defect.

77.  Upon information and belief, GM issued Technical Service Bulletins to its dealerships and service centers describing problems with and failures of the AC System, which indicate GM's knowledge of the AC System Defect.

78.  On October 6, 2014, GM issued bulletin #PIT5331 covering 2015 Escalades, Suburbans, Tahoes, and Yukons, and 2014-2015 Silverados and Sierras. The bulletin concerned cracks in the AC System components that allow refrigerant/refrigerant to leak out, resulting in a "very low/empty refrigerant level" and the AC System "blowing warm" air instead of producing cold air. This bulletin instructed service technicians to replace the compressor-to-condenser line and install a line bracket in the AC System.

-15-

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

79.     On May 29, 2015, GM issued bulletin #PIE0340 covering 2015 Escalades, Silverados, Suburbans, Tahoes, Sierras, and Yukons. The bulletin concerned "A/C not performing," which problem could be noticed prior to purchase/lease of the Vehicle, "during Pre-Delivery Inspection" of the Vehicles.

80.     On information and belief, TSBs and similar bulletins are issued only after significant investigation into the issue by GM. Given that the first of these TSBs was issued in fall 2014, it is evident that GM knew about the AC System failures as early as 2013 and was investigating them prior to issuing the first TSB addressing the Defect in 2014.

**C.     GM's Knowledge of the AC System Defect from Repair Data**

81.     GM also knew or should have known about the AC System Defect because of the large number of claims for AC System repairs and part replacements made during the Class Vehicles' warranty periods.

82.     Consumers complain that the AC System Defect often causes AC System failures at low mileages, within the warranty period.

83.     Upon information and belief, GM collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within GM's control and unavailable to Plaintiffs without discovery.

**D.     GM's Knowledge of the AC System Defect Gathered from the Large Number of Replacement AC System Parts Ordered from GM**

84.     Upon information and belief, GM also knew or should have known about the AC System Defect because of the higher than expected number of replacement AC System parts ordered from GM, which should have alerted GM that this was a Defect affecting a wide range of its Vehicles.

85.     Upon information and belief, GM service centers use GM replacement parts that they order directly from GM. Therefore GM would have detailed and accurate data regarding the number and frequency of replacement part orders. The ongoing high sales of replacement AC System parts – indeed so much so that the parts were (and continue to be) on national backorder –

was certainly known to GM, and should have alerted GM that its AC Systems were defective and causing Class Vehicles' AC Systems to fail.

**E.    GM's Knowledge of the AC System Defect Gained from Class Member Complaints Made Directly to GM**

86.    GM also knew or should have known about the AC System Defect because numerous consumer complaints regarding failures of the AC System were made directly to GM. The large number of complaints, and the consistency of their descriptions of the AC System failures in the Class Vehicles, should have alerted or actually alerted GM to this serious Defect affecting a wide range of its Vehicles.

87.    The full universe of complaints made directly to GM about the AC System Defect is information presently in the exclusive custody and control of GM and is not yet available to Plaintiffs prior to discovery. On information and belief, however, many Class Vehicle owners complained directly to GM and GM dealerships about the AC System failures their Vehicles experienced. For example, some instances of these direct-to-GM complaints were posted on online on GM's own website forums, and responded to by GM customer service:

> "We bought our 2014 Chevy Z71 LTZ 4 Door 1/2 ton truck last June when they first came out. … now that we've had it just over a year, putting some miles on it (almost 34,000), and the warranty is about over with, the AC has gone out on us. The AC is just blowing hot air. Had been working fine up until this afternoon. The controls all work, the vents change as they should, just no cool air. … We are going to take it to a dealer for repair but our experience with these dealers so far has not been a good one.... No loaner car and a week wait to find the problem is a bit frustrating for someone who just spent $40,000 on their product."
> https://chevroletforum.com/forum/2014-gmtk2xx-110/2014-silverado-ac-problems-already-67170/ (posted August 4, 2014)

An official GM representative from Chevrolet Customer Care responded to the post on August 6, 2014.

> "I bought a 2014 Silverado about 5 months ago. For the most part I have really enjoyed it. On Wednesday I noticed the air conditioning was not working. It was only blowing hot air. I immediately took it to the dealer in Murray Utah who diagnosed the problem as a faulty compressor. He said they could fix it under warranty but they didn't have the parts and would have to order them in from Denver. He told me to bring the vehicle back on Thursday. I came back on Thursday only to be told that they had missed the order deadline the day before so no parts. He told me to come back Friday. In the meantime it is 90 degrees outside and the black interior of the truck is scalding hot. I went back Friday (yesterday) to

be told that the compressor had come in but a valve they need had not come in. He told me to come back Saturday (today). I am told that the parts are now all here and it will take 4 hours to fix. I told him that I was surprised to have a compressor go out on such a new vehicle and I asked him if he was seeing a lot of these compressor problems and he said it was the second this week."
https://chevroletforum.com/forum/2014-gmtk2xx-110/2014-silverado-ac-problems-already-67170/ (posted September 27, 2014)

"Well I just had another bad experience with the AC [in 2015 Tahoe LTZ]. …It was set on auto 74 degrees and 90 degrees outside. It would blow cool air for about a minute from the front vents at full fan speed, then the fan speed would back down to low with warm air and then switch to full fan speed and the air would blow cool air from the vents at your feet with just a trickle of warm air coming from the front vents then it would start the process all over again. This continued for about 30 minutes during my drive to the Dealer and about 30 more minutes with the service adviser in the vehicle. No cold air at anytime during that hour. Diagnosis: operating as designed. Are you kidding me."
http://www.tahoeyukonforum.com/threads/a-c-not-working.61544/page-4 (posted October 29, 2014)

An official GM representative from Chevrolet Customer Care responded to the posts on this thread as well.

88.     Other instances of these direct-to-GM complaints are described in Class Vehicle owners' complaints logged with NHTSA ODI and posted on online vehicle owner forums:

"At 48,000 miles, the [2015 Chevrolet Suburban] AC condenser has cracked, and the dealer has told us this is a manufacturer's problem. The replacement part is on national backorder, and we have waited 5 weeks for the replacement part to come in. Neither the dealer nor GM can tell us when the replacement part will arrive. **I have filed a complaint with GM**, and the case no. is 8-3029151511." NHTSA ODI 10995213 (incident date May 2, 2017)

"I have been a GMC loyal owner for many years. We purchased the extended warranty. The problem is the [GMC Sierra 1500 V8] ac quit working and only blows hot air. I live in Orlando FL where it is 95+ degrees daily plus humidity. My ac has not been working for at least 3 weeks! I took it to the shop and they kept it for a couple of days and had me pick it up saying the part had to be ordered. That problem I am told is that **many other GMC owners are having issue** and the part is back ordered. It actually has to be made and they can give me no idea when the part will be available. Meanwhile I am told that there are some 2000+ other owners waiting as well. This is not acceptable! Meanwhile payments are still being made for a vehicle that I paid $43,000 for because I work hard everyday and at the very least deserve to drive to work in comfort paying that amount of money. I live in an area where the traffic is awful and drive in bumper to bumper on I4. That is maddening with[out] an a/c. So windows are down and I get to inhale the exhaust from all the other vehicles on the road. Meanwhile the only calls I get from GMC is to purchase a new vehicle from them. The only incentive they offer is a $1000.00 off loyalty certificate. Really? Who in their right mind would buy

another vehicle from them when **they have no solution and no concern**. I want to find a way to let unsuspecting new buyers know how much GMC cares when you have a problem and that is not at all! I called the dealership again today because I have heard nothing from them in a week and a half. The same exact response was given to me again. **The part is ordered. It has not been made and there is no time line when you might get your AC working again**. Thank GMC" http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_worki ng.shtml (posted April 2017; updated June 2017)

"Same issue as all the rest: 1.) [2015 Chevrolet Tahoe LT] A/C stops working 2.) Mechanic replaces [refrigerant] but can't find a leak in the lines 3.) A/C is blowing hot air again after 3 days; [refrigerant] completely gone 4.) Mechanic runs dye through lines to find the leak, replaces [refrigerant] again 5.) A/C is blowing hot air again after 2 days; [refrigerant] completely gone 6.) Mechanic notes a Technical Service Bulletin (TSB) and **widespread complaints of issue**...suggests browbeating Chevy dealer over the issue, given how new the truck is. 7.) **Issue raised with Chevy dealer...no response**… Probably the last GM vehicle I will ever purchase." http://www.carcomplaints.com/Chevrolet/Tahoe/2015/AC_heater/ac_stopped_wor king.shtml (posted May 2017)

89.     As the above sampling of complaints shows, Class Members have been vocal in complaining directly to GM about the AC System Defect, and the number and consistency of their complaints should have alerted GM about the AC System Defect.

**F.      GM's Knowledge of the AC System Defect from Class Member Complaints Collected by NHTSA's Office of Defect Investigations**

90.     In addition to complaints made directly to GM, many Class Vehicle owners and lessees lodged complaints about the AC System Defect with NHTSA ODI.

91.     Federal law requires automakers like GM to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

92.     Thus automakers should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers' ongoing obligation to identify potential defects in their vehicles, such as failures of AC Systems to emit cold air as intended.

93.     From its monitoring of the NHTSA databases, GM knew or should have known of the many complaints about AC System Defect logged by NHTSA ODI, and the content,

consistency, and large number of those complaints alerted, or should have alerted, GM to the AC

System Defect.

94.     A sampling of the publicly available complaints lodged with NHTSA ODI,

includes some of those quoted above, as well as the following:

> "The [caller] owns a 2015 Cadillac Escalade ESV. While driving in the rain, the air conditioner condenser fractured and the air conditioner failed to work. The **failure caused the windows to fog up and impaired the driver's visibility**. The vehicle was taken to the dealer … who stated that the part was unavailable. The **failure recurred. The manufacturer was made aware of the failure and stated that it was a known issue.** The manufacturer provided the contact a rental vehicle for three days. The vehicle was repaired after seven weeks when the part was located. The cause of the failure and repair part were not provided. The failure mileage was approximately 7,500." NHTSA ODI # 11005298 (incident date March 23, 2017)

> "The [2015 GMC Yukon] air conditioner condenser failed. The part is on backorder and I have no air conditioning for an undetermined amount of time. No eta on the part and **they will replace the part with the same faulty model**. No loaner car, no air-conditioning." NHTSA ODI # 11006147 (incident date July 8, 2017)

> "[2015 GMC Yukon] air conditioner condenser failed. Replacement part is on national back order we have been waiting **5 weeks so far and no update from GM**." NHTSA ODI # 10991649 (incident date April 10, 2017)

> "[2015 Cadillac Escalade] air conditioning stopped working in May 2017. Called the dealership and they told me that there was a high number of cars coming back with the same problem-asked me to come in so they could assess. Came in-20 minutes later-they informed me that my issue was the same. Condenser was out. Part was back ordered. **I've now waited for 8 weeks and the part is still back ordered and GM is refusing to give us an ETA when its available**. Driving with no AC during the summer in high temps and on the freeways has now aggravated my daughter's allergies and she is now on medication. Can't seem to get any answer from gm and it's not just me." NHTSA ODI # 11010423 (incident date May 30, 2017)

> "[2015 Chevrolet suburban] air conditioning condenser is faulty vehicle is covered bumper to bumper under warranty and no replacement is available. No rental car offered, no date of repair is available. **Driving with no air conditioning in the heat is miserable.**" NHTSA ODI # 11002905 (incident date June 5, 2017)

> "There was a not any big event that caused it. [2015 Chevrolet suburban] air conditioning was blowing cold air on Monday June 26, 2017; on Tuesday June 27, 2017 it was warm air even after driving around for 6 minutes. Immediately took it to the dealer we purchased it from: Priority Chevrolet. The condenser had stopped working. Couldn't hold [refrigerant] because there was a hole in it. ... ?!?!?! Not sure of the cause. My car is barely 2 years old! I have four young children in the middle of summer initially we were told 1-2 month wait!? **Apparently this isn't the first condenser they have had to replace.** Tells me something isn't right with Chevrolet." NHTSA ODI # 11001975 (incident date June 27, 2017)

"National a/c condenser backorder: today marks 21 days without an a/c condenser on my car [2015 Chevrolet suburban]. I have a small child (15 months old) and GM has no idea when an a/c condenser will be available. I am the 6th person at my local dealership to need one, the 3rd one at a local automotive garage. **GM says they have not heard of this issue** but a small google search will show there is a very large issue across the nation, hence the national backorder on the part. I have tried calling various Chevrolet dealership trying to locate this part." NHTSA ODI # 10992401 (incident date May 10, 2017)

95.     As the above sampling of complaints makes clear, consumers have been vocal in complaining to NHTSA ODI about the AC System Defect and GM was, or should have been, aware of and monitoring those complaints, and thus should have known about the AC System Defect.

### G.     GM's Knowledge of the AC System Defect Gleaned from Class Member Complaints on Public Online Forums

96.     In addition to complaints made directly to GM and collected by NHTSA ODI, many Class Vehicle owners and lessees posted complaints about the AC System Defect on public online vehicle owner forums. The following is a small sampling of such complaints:

"2014 Sierra SLT … I was heading out this morning to take the youngest daughter to move into her apartment where she is going to school. 3 hrs away. All is fine then about 1 1/2 hrs into our journey noticed the air was not as cold as it had been from the A/C. Well, nothing I did helped to get it cooler, just getting hotter. Blowing just fine. …We had to lower the windows. Getting to be about 95 outside and more miserable by the mile. And traffic was moving slowly. By the time we made it to our destination it was a 100 or hotter outside. This started happening at mileage 11950. … temp outside at one point showed 111 per my nifty pickup thermometer. Anyway it was just miserable. This all started about 1030 this morning and had to leave the windows down all day that we were in the pickup. Finally made it home tonight about 9pm with outside temp of 94.The **AC is dead in the water with almost a year on her and a little less than 12k miles**. I have never had a vehicle lose the AC before and I have had MANY new vehicles."
http://www.gm-trucks.com/forums/topic/163791-well-have-a-problemno-ac33/ (posted August 17, 2014)

"Bought a 2014 GMC Sierra SLE Crew Cab from Tulley GMC in Nashua about a month ago. I also bought the extended warranty, thank GOD!!!! A couple weeks ago, started noticing the AC wasn't blowing icy cold air. Took it to the service department and the problem is the AC condenser. They said it is covered under my warranty but the part is 'back ordered'. I've been reading some comments online about other people with this same issue. I'm getting a little nervous because I'm seeing **people that have been waiting months and still no AC condensers available**. I have a pregnant girlfriend at home and if I need to drive us

-21-

somewhere, I need AC at least for her. The dealer did give me a loaner and say that I can stay in it for as long as it takes but I'm pissed because I just bought the truck and I'm paying $500 a month to drive around in a Terrain while my truck sits in their back parking lot. Anyone have any luck with a dealer actually getting their hands on a AC condenser?"
http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (posted June 2017)

"Purchased 2015 Chevy Tahoe LTZ new, 3 years ago. Air conditioning not working and told it needs a condenser. **Part is on back order with no delivery date available due to the high number of 2015 Tahoes that are waiting for this part**. Went online to see if anyone else is having this problem with the same make/model/year and the number is astonishing. This was a brand new model and first year offered from Chevy so there is obviously a manufacturing issue. Car warranty is expired and **was told part would be over $2000**!"
http://www.carproblemzoo.com/chevrolet/tahoe/air-conditioner-problems.php (posted March 2017)

"2014 GMC Sierra [1500], had to replace the AC Condenser (3 yr. old truck), cost $1000. **2 weeks after it was replaced the AC quit working again**. Brought it back in, had to have a High Side Line Hose replaced, $300 more dollars to fix. No recall on an issue that seems to be a common problem with these trucks. Disgusting."
http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (posted June 2017)

97.    As shown by this small sampling of complaints from vehicle owner forums consumers have been vocal in complaining about the AC System Defect and the AC failure it causes. A multi-billion dollar automaker like GM undoubtedly had and has a marketing department that tracks such sites and should reasonably have been aware of the AC System Defect in the Class Vehicles.

98.    In sum, as early as 2013, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, GM was aware of the AC System Defect, should have been aware of the AC System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the AC System Defect, based on, among others, the following sources:

a.    Pre-release design, manufacturing, engineering, and testing data;

b.    Service bulletins sent by GM to its dealerships evincing knowledge of ongoing issues with AC Systems in the Class Vehicles;

c.    Detailed data gathered by GM about large number of AC System Defect repairs;

-22-

1          d.      Knowledge GM had of the large number of replacement AC System parts

2    ordered from GM;

3          e.      Numerous and consistent consumer complaints made directly to GM about

4    the AC System Defect;

5          f.      Numerous and consistent consumer complaints collected by NHTSA ODI

6    about the AC System Defect;

7          g.      Numerous and consistent consumer complaints made on online vehicle

8    owner forums; and

9          h.      GM service center employees' familiarity with and knowledge of the AC

10   System Defect.

11        99.     Moreover, the large number and consistency of Class Member complaints

12   describing the AC System's propensity to crack, leak refrigerant, lose pressure, and fail to

13   function underscores the fact that Class Members considered the AC System Defect to be a

14   material safety issue to the reasonable consumer.

15   **IV.    GM Received Pre-Suit Notice Multiple Times and Ways**

16        100.    In addition to other forms of notice, including those detailed in this Complaint,

17   GM was put on notice of Mr. Jenkins's claims in February 2015 when Mr. Jenkins took his

18   Vehicle to his dealership, Lehmer's Concord Buick Chevrolet, to report his Vehicle's AC System

19   failure. The dealership told Mr. Jenkins the repair would not be covered under warranty and that

20   the repair could not occur immediately because the condenser part was backordered nationwide.

21        101.    GM had further notice of Mr. Jenkins's claims in February 2015, when Mr.

22   Jenkins lodged an official complaint about his AC System's failure with a regional specialist at

23   GM Corporate.

24        102.    GM had further notice of Mr. Jenkins's claims in fall 2016, when Mr. Jenkins

25   contacted GM's buyback division to ask that they buy back his vehicle. After his request was

26   "under review" for three or four months, GM finally informed Mr. Jenkins in September 2017

27   that GM would not buy back Mr. Jenkins's Vehicle.

28

1   103.   GM had notice of Mr. Garcia's claims on or about September 11, 2017, when Mr.

2   Garcia took his Vehicle to Bob Stall Chevrolet to complain about his Vehicle's AC System

3   failure.

4   104.   GM had further notice of Mr. Jenkins and Mr. Garcia's claims, including on behalf

5   of the Class, on October 10, 2017, when it received Plaintiffs pre-suit notice letter, attached here

6   as Exhibit C.

7   105.   GM had notice of Mr. Williams's claims on or about January 2017, when Mr.

8   Williams first took his Vehicle to Silver Star Chevrolet to complain about the refrigerant leak,

9   and February 2017 when Mr. Williams took his Vehicle back to Silver Star to complain that his

10  AC System had failed. GM had further notice of Mr. Williams's claims in June 2017, when Mr.

11  Williams brought his Vehicle back to Silver Star to complain that the AC System had failed

12  again.

13  **V.   <u>Applicable Warranties</u>**

14  106.   GM sold and leased the Class Vehicles with a written express warranty covering

15  the Vehicles for three years or 36,000 miles, whichever comes first.

16  107.   GM's New Vehicle Limited Warranty expressly "covers repairs to correct any

17  vehicle defect" and states that repairs will be done within a "reasonable time."

18  108.   The same warranties are made in GM's Certified Pre-Owned ("CPO") 12-

19  Month/12,000 Mile Bumper-to-Bumper Limited Warranty.

20  109.   GM provides these warranties to buyers and lessees after the purchase/lease of the

21  Class Vehicle is completed; buyers and lessees have no pre-sale/lease knowledge or ability to

22  bargain as to the terms of the warranties.

23  110.   GM also provides an express written warranty with all GM "Original Equipment"

24  replacement parts. The AC System component parts are covered by GM's "Limited Lifetime

25  Parts Warranty," which promises that GM will repair or replace, free of all charges except labor,

26  any covered part that was originally installed by a GM dealership at the consumer's expense.

27

28

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

1

## VI.     GM's Marketing and Concealment

2      111.     Upon information and belief, GM knowingly marketed and sold/leased the Class

3   Vehicles with the AC System Defect, while willfully concealing the true inferior quality and sub-

4   standard performance of the Class Vehicles' AC Systems.

5      112.     GM directly markets the Class Vehicles to consumers via extensive nationwide,

6   multimedia advertising campaigns on television, the Internet, billboards, print publications,

7   mailings, and through other mass media.

8      113.     GM's marketing material describes the various Class Vehicles as "reliable,"

9   "durable," with "functional," "customer-focused" interior AC Systems.

10      114.     In practice, the Class Vehicles are not as comfortable or reliable as GM's

11   marketing suggests. GM concealed the fact that the Class Vehicles instead not even comfortable

12   or enjoyable under ordinary conditions because the AC Systems repeatedly and consistently leak

13   refrigerant, lose pressure, and fail to provide cool air into the passenger cabin.

14      115.     Plaintiffs and Class Members were exposed to GM's long-term, national,

15   multimedia marketing campaign touting the supposed quality, safety, and comfort of the Class

16   Vehicles, and Class Members justifiably made their decisions to purchase or lease their Class

17   Vehicles based on GM's misleading marketing that concealed the true, defective nature of the

18   Class Vehicles.

19      116.     Further, GM knowingly misled Class Members about the true, defective nature of

20   the Class Vehicles. As detailed above, upon information and belief, GM has been aware of the

21   AC System Defect since at least 2013, and certainly well before Plaintiffs and Class Members

22   purchased or leased their Class Vehicles, through pre-release evaluation and testing;

23   investigations resulting in TSBs; the high number of AC System repairs and replacement part

24   sales; and the numerous and consistent complaints about the AC System Defect made directly to

25   GM, collected by NHTSA, and posted in public online forums.

26      117.     In sum, GM has actively concealed the existence and nature of the AC System

27   Defect from Class Members since at least 2013 despite its knowledge of the existence and

28   pervasiveness of the AC System Defect. Specifically, GM has:

a.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the AC System Defect;

b.    Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' AC Systems were defective and not fit for their intended purposes;

c.    Failed to disclose, and actively concealed, the fact that the Class Vehicles' AC Systems were defective, despite that GM learned of the AC System Defect as early as 2013, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles;

d.    Failed to disclose, and actively concealed, the existence and pervasiveness of the AC System Defect even when directly asked about it by Class Members during communications with GM, GM Customer Care, GM dealerships, and GM service centers;

e.    Actively concealed the AC System Defect by forcing Class Members to bear the cost of temporary "fixes" while at the same time performing those "fixes" at no (or lower) cost for those who complained vocally and often, and calling these "goodwill" services; and

f.    Actively concealed the AC System Defect by consistently treating the mold and odors with temporary "fixes," so that the AC System Defect is not permanently corrected in Class Members' vehicles, even though Class Members were led to believe that the "fixes" had cured the AC System Defect in their Vehicles.

118.   By engaging in the conduct described above, GM has concealed, and continues to conceal, the AC System Defect from Class Members. If Class Members had had knowledge of the information GM concealed, they would not have purchased or leased the Class Vehicles or would have paid less to do so.

**FRAUDULENT CONCEALMENT ALLEGATIONS**

119.   Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at GM responsible for disseminating false and misleading marketing materials regarding the Class Vehicles. GM necessarily is in possession of all of this information. Plaintiffs' claims arise out of GM's fraudulent concealment of the AC System Defect, and its representations about the quality, safety,

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

1   and comfort of the Class Vehicles. To the extent that Plaintiffs' claims arise from GM's

2   fraudulent concealment, there is no one document or communication, and no one interaction,

3   upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including

4   specifically at the time they purchased or leased their Class Vehicles, GM knew, or was reckless

5   in not knowing, of the AC System Defect; GM was under a duty to disclose the Defect based

6   upon its exclusive knowledge of it, and its concealment of it; and GM never disclosed the Defect

7   to Plaintiffs or the public at any time or place or in any manner.

8          120.    Plaintiffs make the following specific fraud allegations with as much specificity as

9   possible absent access to the information necessarily available only to GM:

10          a.    **Who**:  GM actively concealed the AC System Defect from Plaintiffs and

11   Class Members while simultaneously touting the safety, comfort, sophistication, and quality of

12   the Class Vehicles, as alleged in paragraphs 99-106, above. Plaintiffs are unaware of, and

13   therefore unable to identify, the true names and identities of those specific individuals at GM

14   responsible for such decisions.

15          b.    **What**:  GM knew, or was reckless or negligent in not knowing, that the

16   Class Vehicles contain the AC System Defect, as alleged above in paragraphs 63-88. GM

17   concealed the Defect and made representations about the safety, comfort, sophistication, world-

18   class quality, and other attributes of the Class Vehicles, as specified above in paragraphs 99-106.

19          c.    **When**:  GM concealed material information regarding the Defect at all

20   times and made representations about the quality, safety, and comfort of the Class Vehicles,

21   starting no later than 2013, or at the subsequent introduction of certain models of Class Vehicles

22   to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing

23   to this day, as alleged above in paragraphs 99-106. GM still has not disclosed the truth about the

24   Defect in the Class Vehicles to anyone outside of GM. GM has never taken any action to inform

25   consumers about the true nature of the Defect in Class Vehicles. And when consumers brought

26   their Vehicles to GM complaining of the AC System failures, GM denied any knowledge of or

27   responsibility for the AC System Defect.

28

d. **Where**: GM concealed material information regarding the true nature of the Defect in every communication it had with Plaintiffs and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which GM disclosed the truth about the Defect in the Class Vehicles to anyone outside of GM. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on GM's website.

e. **How**: GM concealed the AC System Defect from Plaintiffs and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. GM actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and GM promised in its marketing materials that Class Vehicles have qualities that they do not have.

f. **Why**: GM actively concealed material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the quality, safety, and comfort of the Class Vehicles. Had GM disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would have paid less for them.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

121.    Upon information and belief, GM has known of the AC System Defect in the Class Vehicles since at least 2013, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, and yet has concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the AC System Defect. GM continues to conceal the Defect to this day.

1   122.   Any applicable statute of limitation has been tolled by GM's knowledge, active

2   concealment, and denial of the facts alleged herein, which behavior is ongoing.

3   **Estoppel**

4   123.   GM was and is under a continuous duty to disclose to Plaintiffs and Class

5   Members the true character, quality, and nature of the Class Vehicles. GM actively concealed –

6   and continues to conceal – the true character, quality, and nature of the Class Vehicles and

7   knowingly made representations about the world-class quality, sophistication, state-of-the-art

8   safety, and comfort of the Class Vehicles. Plaintiffs and Class Members reasonably relied upon

9   GM's knowing representations and active concealment of these facts. Based on the foregoing,

10   GM is estopped from relying on any statutes of limitation in defense of this action.

11   **Discovery Rule**

12   124.   The causes of action alleged herein did not accrue until Plaintiffs and Class

13   Members discovered that their Class Vehicles contained the AC System Defect.

14   125.   Plaintiffs and Class Members had no realistic ability to discern that the Class

15   Vehicles were defective until – at the earliest – after the AC System Defect caused their AC

16   Systems to leak refrigerant, lose pressure, and fail to function. Even then, Plaintiffs and Class

17   Members had no reason to know the AC System failures were caused by a defect in the Class

18   Vehicles because of GM's active concealment of the AC System Defect.

19   126.   Plaintiffs and Class Members were not reasonably able to discover the AC System

20   Defect until after they had purchased or leased their Class Vehicles, despite their exercise of due

21   diligence, and their causes of action did not accrue until they discovered that the AC System

22   Defect caused their Vehicles' AC Systems to leak refrigerant, lose pressure, and fail to function.

23   **CLASS ACTION ALLEGATIONS**

24   127.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other

25   Class Members similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3),

26   (b)(2), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy,

27   predominance, and superiority requirements of those provisions.

28

1381385.2

128.     Plaintiffs bring this class action, including all causes of action stated below, on behalf of themselves and all other similarly situated members of the proposed Class (referred to herein as "Class Members"), defined as follows:

> All persons who purchased or leased a Class Vehicle with the Air Conditioning System in California. A "Class Vehicle" is a vehicle of any of the following models/model years: 2015-2017 Cadillac Escalade, 2014-2016 Chevrolet Silverado 1500, 2015-2017 Chevrolet Suburban, 2015-2017 Chevrolet Tahoe, 2014-2017 GMC Sierra 1500, 2015-2017 GMC Yukon.

129.     Excluded from the proposed Class are: (1) GM, any entity or division in which GM has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, otherwise divided into subclasses, or modified in any other way.

## Numerosity

130.     Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in GM's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

## Typicality

131.     The claims of Plaintiffs are typical of the claims of Class Members in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, marketed, distributed, warranted, sold/leased, and serviced by GM. Plaintiffs, like all Class Members, have been damaged by GM's misconduct in that they purchased/leased a Vehicle they would not have purchased/leased, or would not have purchased/leased at the price paid, and incurred or will incur the cost of repairs relating to and caused by the AC System Defect.

1    Furthermore, the factual bases of GM's misconduct are common to all Class Members and

2    represent a common thread of misconduct resulting in injury to all Class Members.

3    **Adequate Representation**

4         132.    Plaintiffs will fairly and adequately represent and protect the interests of the Class

5    Members. Plaintiffs have retained counsel with substantial experience in prosecuting consumer

6    class actions, including actions involving defective vehicles.

7         133.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on

8    behalf of Class Members, and have the financial resources to do so. Neither Plaintiffs nor their

9    counsel have interests adverse to those of Class Members.

10    **Predominance of Common Issues**

11         134.    There are numerous questions of law and fact common to Plaintiffs and Class

12    Members that predominate over any question affecting only individual Class Members, the

13    answers to which will advance resolution of the litigation as to all Class Members. These

14    common legal and factual issues include:

15         a.    whether the AC System in the Class Vehicles is defective;

16         b.    whether GM knew or should have known about the AC System Defect,

17    and, if yes, how long GM has known of the Defect;

18         c.    whether the defective nature of the Class Vehicles constitutes a material

19    fact reasonable consumers would have considered in deciding whether to purchase or lease a

20    Class Vehicle;

21         d.    whether GM had a duty to disclose the defective nature of the Class

22    Vehicles to Plaintiffs and Class Members;

23         e.    whether GM omitted and failed to disclose material facts about the Class

24    Vehicles;

25         f.    whether GM's concealment of the true defective nature of the Class

26    Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing or leasing

27    Class Vehicles;

28

1         g.     whether GM's representations and omissions about the true defective

2 nature of the Class Vehicles were likely to mislead or deceive, and therefore fraudulent, within

3 the meaning of California's Unfair Competition Law (UCL);

4         h.     whether GM's representations and omissions about the true defective

5 nature of the Class Vehicles were and are unfair within the meaning of the UCL;

6         i.     whether GM represented, through its words and conduct, that the Class

7 Vehicles had characteristics, uses, or benefits that they did not actually have;

8         j.     whether GM represented, through its words and conduct, that the Class

9 Vehicles were of a particular standard, quality, or grade when they were of another;

10         k.     whether GM advertised the Class Vehicles with the intent not to sell/lease

11 them as advertised;

12         l.     whether GM's representations and omissions about the true defective

13 nature of the Class Vehicles were likely to create confusion or misunderstanding;

14         m.     whether GM's representations and omissions about the true defective

15 nature of the Class Vehicles were and are deceptive;

16         n.     whether the Class Vehicles were unfit for the ordinary purposes for which

17 they were used, in violation of the implied warranty of merchantability;

18         o.     whether Plaintiffs and the other Class Members are entitled to a declaratory

19 judgment stating that the AC Systems in Class Vehicles are defective and/or not merchantable;

20         p.     whether Plaintiffs and the other Class Members are entitled to equitable

21 relief, including, but not limited to, a preliminary and/or permanent injunction;

22         q.     whether GM should be declared financially responsible for notifying all

23 Class Members of the problems with the Class Vehicles and for the costs and expenses of

24 permanently remedying the AC System Defect in the Class Vehicles; and

25         r.     whether GM is obligated to inform Class Members of their right to seek

26 reimbursement for having paid to diagnose, repair, or replace the defective AC Systems.

27

28

**Superiority**

135.    Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of GM's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

136.    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims (compared to the cost of litigation), it is likely that only a few Class Members could afford to seek legal redress for GM's misconduct. Absent a class action, Class Members will continue to incur damages, and GM's misconduct will continue without remedy.

137.    Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

**(Violation of California's Consumer Legal Remedies Act ("CLRA"),
Cal. Civ. Code § 1750, et seq.)**

138.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

139.    Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

140.    GM is a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

141.    Plaintiffs and Class Members are "consumers" within the meaning of the CLRA. Cal. Civ. Code § 1761(d).

142.    The purchases and leases of Class Vehicles by Plaintiffs and Class Members constitute "transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

143.    The Class Vehicles constitute "goods" or "services" as defined by the CLRA. Cal. Civ. Code §1761(a) and (b).

1381385.2

144.    Plaintiffs and Class Members purchased or leased the Class Vehicles primarily for personal, family, and household purposes as meant by the CLRA. Cal. Civ. Code § 1761(d).

145.    GM's representations, active concealment, failures to disclose, and omissions regarding the Class Vehicles violated the CLRA in the following ways:

a.    GM misrepresented that the Class Vehicles had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b.    GM misrepresented that the Class Vehicles were of a particular standard, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

c.    GM advertised the Class Vehicles with an intent not to sell/lease them as advertised (Cal. Civ. Code § 1770(a)(9));

d.    GM misrepresented that the Class Vehicles and the warranties conferred or involved rights, remedies, or obligations that they did not (Cal. Civ. Code § 1770(a)(14)); and

e.    GM misrepresented that the Class Vehicles were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

146.    GM's unfair and deceptive acts or practices occurred repeatedly in GM's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to purchasers and lessees of the Class Vehicles.

147.    GM knew, by 2013 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' AC Systems suffered from an inherent defect, were defectively designed or manufactured, would fail repeatedly, and were not suitable for their intended use.

148.    By 2013 at the latest, GM had exclusive knowledge of material facts concerning the existence of the AC System Defect in its Class Vehicles. Furthermore, GM actively concealed the Defect from consumers by denying the existence of the Defect to Class Members who contacted GM about their AC System failures, failing to provide a permanent remedy for the AC System Defect within a reasonable time under warranty, and replacing defect AC System components with the same defective replacement parts.

149.    GM was under a duty to Plaintiffs and Class Members to disclose the defective nature of the AC Systems, as well as the associated costs that would have to be repeatedly expended in order to temporarily address the failures caused by the AC System Defect, because:

a.    GM was in a superior position to know the true state of facts about the AC System Defect in the Class Vehicles;

b.    Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the AC System Defect until, at the earliest, the manifestation of the Defect; and

c.    GM knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the AC System Defect prior to its manifestation.

150.    In failing to disclose the defective nature of the Class Vehicles, GM knowingly and intentionally concealed material facts and breached its duty not to do so.

151.    The facts concealed or not disclosed by GM to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the AC System Defect to be an undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and other Class Members known that the Class Vehicles had the AC System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for it.

152.    Plaintiffs and Class Members are reasonable consumers who did not expect their Class Vehicles to contain a defective AC System. It is a reasonable and objective consumer expectation for consumers to expect the AC System not to leak refrigerant, lose pressure, and fail to function.

153.    As a result of GM's misconduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles contain defective AC Systems and repeatedly spring leaks, lose pressure, and fail to function due to the AC System Defect, causing inconvenience, creating an uncomfortable and unhealthy environment for vehicle occupants, and causing Class Members to spend money, even when the Vehicle was still under warranty, to attempt to remedy the Defect.

154.   As a direct and proximate result of GM's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages in that they have a Vehicle with a defective AC System and they have experienced and may continue to experience their Class Vehicles' AC Systems leaking refrigerant, losing pressure, and failing to function, for which there is no permanent fix.

155.   Plaintiffs and the Class seek an order enjoining GM's unfair or deceptive acts or practices and equitable relief under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

156.   In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs, has served GM with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Class Vehicles purchased by Plaintiffs and Class Members, and demanded that GM, within thirty (30) days of such notice, corrects or agrees to correct the actions described therein and agrees to reimburse Plaintiffs and Class Members' associated out-of-pocket costs. If GM fails to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to seek compensatory and monetary damages and attorneys' fees to which Plaintiffs and Class Members are entitled under the CLRA.

157.   GM received proper notice of its alleged violations of the CLRA pursuant to Cal. Civ. Code § 1782(a), via a letter sent to GM and its registered service agent on October 5, 2017, on behalf of Plaintiffs Ryan Jenkins and Yamet Garcia and all others similarly situated. GM failed to provide the appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter. The notice letter is attached hereto as Exhibit C.

158.   Thus, pursuant to Cal. Civ. Code §§ 1780(a), 1780(e), and 1782(a), Plaintiffs seek, in addition to equitable relief, actual damages, restitution, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## SECOND CAUSE OF ACTION

**(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.)**

159.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1381385.2

1    160.    Plaintiffs bring this cause of action for themselves and on behalf of Class

2    Members.

3    161.    California Business & Professions Code § 17200 prohibits acts of "unfair

4    competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair,

5    deceptive, untrue or misleading advertising." GM engaged in conduct that violated each of this

6    statute's three prongs.

7    162.    GM committed an unlawful business act or practice in violation of Cal. Bus. &

8    Prof. Code § 17200, et seq., by systematically breaching its warranty obligations and by violating

9    the CLRA and the Song-Beverly Consumer Warranty Act as alleged above and below.

10    163.    GM committed unfair business acts and practices in violation of Cal. Bus. & Prof.

11    Code § 17200, et seq., because the acts and practices described herein, including but not limited

12    to GM's failure to provide a permanent remedy to fix the AC System Defect, were immoral,

13    unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs

14    and Class Members. GM's acts and practices were additionally unfair because the harm to

15    Plaintiffs and Class Members is substantial and is not outweighed by any countervailing benefits

16    to consumers or competition. Further, GM's acts and practices were unfair in that they were

17    contrary to legislatively declared or public policy.

18    164.    GM committed fraudulent business acts and practices in violation of Cal. Bus. &

19    Prof. Code § 17200, et seq., when it concealed the existence and nature of the AC System Defect,

20    while representing in its marketing, advertising, and other broadly disseminated representations

21    that the Class Vehicles were "reliable," "durable," with "functional," "customer-focused" interior

22    AC Systems, when, in fact, they are not. GM's representations and active concealment of the

23    Defect are likely to mislead the public with regard to the true defective nature of the Class

24    Vehicles.

25    165.    GM's unfair or deceptive acts or practices occurred repeatedly in the course of

26    GM's trade or business, and were likely to mislead a substantial portion of the purchasing public.

27

28

1381385.2

1    166.    Plaintiffs relied on GM's material representations and nondisclosures, and would

2    not have purchased/leased, or would have paid less for, the Class Vehicles had they known the

3    truth.

4    167.    As a direct and proximate result of GM's unfair, unlawful, and deceptive practices,

5    Plaintiffs have lost money.

6    168.    Plaintiffs and Class Members seek an order enjoining GM from committing such

7    unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. &

8    Prof. Code § 17203.

9    **THIRD CAUSE OF ACTION**

10    **(Breach of Express Warranty Pursuant to Song-Berly Consumer Warranty Act)**

11    169.    The Class Vehicles are "consumer goods" under Cal. Civ. Code § 1791(a).

12    170.    GM is and was at all relevant times a "manufacturer" and seller of the Class

13    Vehicles under Cal. Civ. Code § 1791(j); and, with respect to leases, is and was at all relevant

14    times a "lessor" of the Class Vehicles under Cal. Civ. Code § 1791(i).

15    171.    Plaintiffs and Class Members bought or leased Class Vehicles designed,

16    manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers

17    such as them, by GM.

18    172.    GM expressly warranted the Class Vehicles against defects including the AC

19    System Defect, as described above, within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

20    173.    As described above, the AC System in the Class Vehicles is defective. The AC

21    System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable

22    consumers, including Plaintiffs and Class Members.

23    174.    GM knew of the AC System Defect when it expressly warranted the Class

24    Vehicles, wrongfully and fraudulently concealed material facts regarding the Defect, failed to

25    inform Class Members that the Class Vehicles had the Defect, and induced Plaintiffs and Class

26    Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

27

28

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

175.    GM is obligated, under the terms of its express warranties and pursuant to Cal. Civ. Code §§ 1793.2 and 1795.4, to permanently and within a reasonable time repair and/or replace the defective AC System at no cost to Plaintiffs and Class Members.

176.    GM breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the AC System Defect, by failing to provide repairs within a reasonable time, and by replacing failed AC System parts with equally defective replacement parts instead of providing a one-time, permanent fix.

177.    GM breached its express warranties by failing to repair the Class Vehicles under warranty and by failing to provide to Plaintiffs or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Vehicles to Plaintiffs and Class Members.

178.    As more fully detailed above, GM was provided with appropriate notice and has been on notice of the Defect and of its breach of its express written warranties from various sources, including Plaintiffs.

179.    Plaintiffs have given GM a reasonable opportunity to cure its failures with respect to its warranties, and GM has failed to do so.

180.    Affording GM any further opportunity to cure their breach of written warranties is unnecessary and futile here.

181.    Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

182.    Accordingly, recovery by the Class Members is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

183.    Any attempt by GM to limit or disclaim the express warranties in a manner that would exclude coverage of the AC System Defect is unenforceable and void pursuant to Cal. Civ. Code § 1790.1.

184.     As a direct and proximate result of GM's breach of its express warranties, Plaintiffs and Class Members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

185.     Pursuant to Cal. Civ. Code § 1794 and 1795.4, Plaintiffs and Class Members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### (Breach of Express Warranty)

186.     The Class Vehicles are and were at all relevant times "goods" within the meaning of, inter alia, Cal. Com. Code §§ 2105(1) and 10103(a)(8).

187.     GM is and was at all relevant times a "merchant" with respect to the Class Vehicles, under, inter alia, Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of the Class Vehicles, under § 2103(1)(d); and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles, under, inter alia, Cal. Com. Code § 10103(a)(16).

188.     Plaintiffs and Class Members are "buyers" or "lessees" within the meaning of, inter alia, Cal. Com. Code §§ 2103(a) and 10103(a)(14).

189.     Plaintiffs and Class Members bought or leased Class Vehicles designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by GM.

190.     GM expressly warranted the Class Vehicles against defects, including the AC System Defect, within the meaning of, inter alia, Cal. Com. Code §§ 2313, 2316, 10210, and 10214.

191.     As described above, the AC System in the Class Vehicles is defective.  The AC System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiffs and Class Members.

192.     GM knew of the AC System Defect when it expressly warranted the Class Vehicles, wrongfully and fraudulently concealed material facts regarding the Defect, failed to

1381385.2

1    inform Class Members that the Class Vehicles had the Defect, and induced Plaintiffs and Class

2    Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

3           193.   GM is obligated, under the terms of its express warranties, to permanently repair

4    and/or replace the AC Systems within a reasonable time for Plaintiffs and Class Members.

5           194.   GM breached its express warranties by supplying the Class Vehicles to Plaintiffs

6    and Class Members with the AC System Defect, by failing to provide repairs within a reasonable

7    time, and by replacing failed AC System parts with equally defective replacement parts instead of

8    providing a one-time, permanent fix.

9           195.   GM breached its express warranties by failing to repair the Class Vehicles and by

10   failing to provide to Plaintiffs or Class Members, as a warranty replacement, a product that

11   conforms to the qualities and characteristics that it promised when it sold the Class Vehicles to

12   Plaintiffs and Class Members.

13          196.   As more fully detailed above, GM was provided with appropriate notice and has

14   been on notice of the Defect and of its breach of express written warranties from various sources,

15   including Plaintiffs.

16          197.   Plaintiffs have given GM a reasonable opportunity to cure its failures with respect

17   to its warranties, and GM has failed to do so.

18          198.   Affording GM any further opportunity to cure their breach of written warranties is

19   unnecessary and futile here.

20          199.   Any express warranties promising to repair and/or correct any defects fail in their

21   essential purposes because the contractual remedy is insufficient to make Class Members whole

22   and because GM has failed and/or have refused to adequately provide the promised remedies

23   within a reasonable time.

24          200.   Accordingly, recovery by the Class Members is not restricted to any written

25   warranties promising to repair and/or correct defects, and they seek all remedies as allowed by

26   law.

27          201.   In its capacity as a warrantor, and by the conduct described herein, any attempt by

28   GM to limit or disclaim the express warranties in a manner that would exclude coverage of the

1    AC System Defect is unconscionable as a matter of law because the relevant purchase/lease

2    transactions were tainted by GM's concealment of material facts. Thus any such effort by GM to

3    disclaim, or otherwise limit, its liability for the AC System Defect is null and void.

4        202.    As a direct and proximate result of GM's breach of express warranties, Plaintiffs

5    and Class Members received goods that have substantially impaired value and have suffered

6    damages in an amount to be determined at trial.

7        203.    Plaintiff and Class Members are entitled to incidental, consequential, and other

8    damages and other legal and equitable relief, as well as costs and attorneys' fees.

9                            **FIFTH CAUSE OF ACTION**

10                 **(Breach of Express Warranty – Magnuson-Moss Warranty Act)**

11       204.    Plaintiffs incorporate by reference each allegation set forth in the preceding

12   paragraphs.

13       205.    The Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

14       206.    Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

15       207.    GM is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

16       208.    GM provided Plaintiffs and Class Members with "written warranties" within the

17   meaning of 15 U.S.C. § 2301(6).

18       209.    GM has breached its express warranties by refusing to honor the express warranty

19   to replace or repair, free of charge and within a reasonable amount of time, any defective vehicle

20   component, including the AC System Defect.

21       210.    At the time Class Vehicles were sold or leased, GM knew that they possessed the

22   AC System Defect and offered an express warranty with no intention of honoring said warranty

23   with respect to the known Defect.

24       211.    Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess

25   the consumer for any costs the warrantor or his representatives incur in connection with the

26   required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the

27   remedy is not made within a reasonable time or because the warrantor imposed an unreasonable

28

duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

212.    At no time has GM offered a permanent or adequate repair or replacement of the AC System that would permanently remedy the Defect. Despite repeated demands by Plaintiffs and Class Members that GM pay the costs and incidental expenses associated with temporarily "fixing" the AC System, GM has refused to do so. GM's refusal to provide a permanent repair or replacement for the AC System Defect within a reasonable amount of time violates 15 U.S.C. § 2304(d)(1).

213.    GM was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

214.    Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiffs have been appointed Class Representatives; nevertheless GM had been notified, as alleged above.

215.    As a direct and proximate result of GM's breach of its express written warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)

216.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

217.    GM's Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

218.    GM is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

219.    Plaintiffs and Class Members who purchased or leased their Class Vehicles within the State of California are "buyers" and "lessees" within the meaning of Cal. Civ. Code §§ 1791(b) and (h).

220.    GM impliedly warranted to Plaintiffs and Class Members that its Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

221.    GM impliedly warranted to Plaintiffs and Class Members that it would repair or replace any defective products, including the defective AC System.

222.    The propensity of the AC System Defect to cause the AC System to leak refrigerant, lose pressure, and fail to function renders the Class Vehicles to not be of the quality that a buyer or lessee would reasonably expect, and therefore not merchantable.

223.    The AC System Defect is latent and was present at the time of sale/lease (indeed, GM's own TSB indicates dealers could discover the Defect during "Pre-Delivery Inspections" done prior to delivering the Vehicle to the consumer), and therefore the Vehicles were not merchantable at the time of sale/lease.

224.    The Class Vehicles do not conform to the promises or affirmations of fact made by GM in its promotional materials and vehicle owner manuals in that the AC System Defect creates an environment in the Class Vehicles' cabin that is neither "functional" nor "customer-focused."

225.    In violation of Cal. Civ. Code § 1791.1(a), GM breached its implied warranty by selling/leasing Class Vehicles that were defective and refusing to permanently replace and/or repair the defective AC Systems.

226.    The AC System Defect has deprived Plaintiffs and Class Members of the benefit of their bargain, and have caused the Class Vehicles to depreciate in value.

227.    Any attempt by GM to limit or disclaim the implied warranties in a manner that would exclude coverage of the AC System Defect is unenforceable and void pursuant to Cal. Civ. Code §§ 1790.1, 1792.3, and 1793.

228.    As a result of GM's breach of its implied warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial and are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §§ 1794 and 1795.4.

## SEVENTH CAUSE OF ACTION

### (Breach of Implied Warranty)

229.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

1381385.2

230.   The Class Vehicles are and were at all relevant times "goods" within the meaning of, inter alia, Cal. Com. Code §§ 2105(1) and 10103(a)(8).

231.   GM is and was at all relevant times a "merchant" with respect to the Class Vehicles, under, inter alia, Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of the Class Vehicles, under § 2103(1)(d); and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles, under, inter alia, Cal. Com. Code § 10103(a)(16).

232.   Plaintiffs and Class Members are "buyers" or "lessees" within the meaning of, inter alia, Cal. Com. Code §§ 2103(a) and 10103(a)(14).

233.   When it sold or leased its Class Vehicles, GM extended an implied warranty to Class Members that the subject Vehicles were merchantable and fit for the ordinary purpose for which they were sold or leased, pursuant to Cal. Com. Code §§ 2314, 10212, and 10214.

234.   Plaintiffs and other Class Members who purchased or leased a Class Vehicle directly from GM are entitled to the benefit of their bargain: a Vehicle with a nondefective AC System that does not leak refrigerant, lose pressure, or fail to function.

235.   Likewise, Plaintiffs and other Class Members who purchased or leased a GM Certified Pre-Owned Class Vehicle are entitled to the benefit of their bargain: a vehicle with a nondefective AC System that does not leak refrigerant, lose pressure, or fail to function.

236.   Class Members who purchased Certified Pre-Owned Class Vehicles are the intended ultimate consumers of the Class Vehicles, and therefore are third-party beneficiaries for the purposes of their implied warranty claims.

237.   GM breached this implied warranty in that its Class Vehicles are (1) not fit for ordinary use, and (2) not of a merchantable quality.

238.   The AC System Defect is latent and was present at the time of sale/lease (indeed, GM's own TSB indicates dealers could discover the Defect during "Pre-Delivery Inspections" done prior to delivering the Vehicle to the consumer), and therefore the Vehicles were not merchantable at the time of sale/lease.

239.    Had the AC System Defect that existed at the time of sale been known, the Class Vehicles could not have been sold or leased, or could not have been sold or leased at the same price.

240.    As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### (Breach of Implied Warranty – Magnuson-Moss Warranty Act)

241.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

242.    Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

243.    Defendant GM is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

244.    The subject Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

245.    GM extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Vehicles and its Class Vehicles' AC Systems.

246.    GM breached this implied warranty by selling/leasing its Class Vehicles with defective AC Systems that were neither merchantable nor fit for their intended purpose.

247.    The AC System Defect is latent and was present at the time of sale/lease (indeed, GM's own TSB indicates dealers could discover the Defect during "Pre-Delivery Inspections" done prior to delivering the Vehicle to the consumer), and therefore the Vehicles were not merchantable at the time of sale/lease.

248.    Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiffs have been appointed Class Representatives; nevertheless GM was notified of its breach of warranty, as alleged above.

249.     Upon information and belief, the number of class members in this action will be greater than 100, and the amount in controversy to be determined by all claims in this action exceeds $50,000. 15 U.S.C. §§ 2310(d)(3)(B)-(C).

250.     As a direct and proximate result of GM's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs, and the Class, have been damaged in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### (Fraud by Concealment)

251.     Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

252.     Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

253.     GM concealed and suppressed material facts concerning the quality of the Class Vehicles, and the AC Systems in the Class Vehicles.

254.     GM concealed and suppressed material facts concerning the serious Defect causing Class Vehicles' AC Systems to leak refrigerant, lose pressure, and fail to function. Upon information and belief, the Defect lies in the AC System components located within the engine compartment of the Class Vehicles. GM knew that Plaintiffs and Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing or leasing the Vehicles. GM further failed to disclose and/or denied the existence the Defect when Plaintiffs and Class Members complained of their AC System's failure.

255.     GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of GM vehicles that the Class Vehicles were world class, comfortable, warranted, and reliable vehicles and concealed the information in order to prevent harm to GM and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease.

256.     These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and

omissions played a significant role in Plaintiffs and Class Members' decisions to purchase or lease the Class Vehicles.

257.    GM had a duty to disclose the AC System Defect in the Class Vehicles because it was known and/or accessible only to GM; GM had superior knowledge and access to the facts; and GM knew the facts were not known to or reasonably discoverable by Plaintiffs and Class Members.

258.    GM also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, comfort, and usability.

259.    Even when faced with complaints regarding the Defect, GM misled and concealed the true cause of the symptoms complained of. As a result, Class Members were misled as to the true condition of the Class Vehicles once at the time of purchase or lease and again when the AC System failure was complained of to GM.

260.    The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased/leased, are material concerns to a consumer.

261.    GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, and avoid recalls that would hurt the brand's image and cost money, and it did so at the expense of Plaintiffs and Class Members.

262.    On information and belief, GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class Members and conceal material information regarding defects that exist in GM vehicles.

263.    Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased their Class Vehicles or would have paid less for

1    them. Plaintiffs and Class Members' actions were justified. GM was in exclusive control of the

2    material facts and such facts were not known to the public, Plaintiffs, or Class Members.

3         264.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class

4    Members sustained damages because they negotiated and paid value for the Class Vehicles not

5    considerate of the AC System Defect that GM failed to disclose, and they paid for temporary

6    repairs and equally defective replacement parts to attempt to remedy the Defect. Had they been

7    aware of the concealed Defect that existed in the Class Vehicles, Plaintiffs and Class Members

8    would have paid less for their Vehicles or would not have purchased or leased them at all.

9         265.    Accordingly, GM is liable to Plaintiffs and Class Members for damages in an

10   amount to be proven at trial.

11        266.    GM's acts were done maliciously, oppressively, deliberately, with intent to

12   defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being to

13   enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to

14   deter such conduct in the future, which amount is to be determined according to proof.

15   **TENTH CAUSE OF ACTION**

16   **(Unjust Enrichment)**

17        267.    Plaintiffs incorporate by reference each allegation set forth in the preceding

18   paragraphs.

19        268.    GM has been unjustly enriched by Plaintiffs and Class Members

20   purchasing/leasing Class Vehicles from GM and purchasing replacement parts and services from

21   GM that Plaintiffs and Class Members would not have purchased/leased but for GM's misconduct

22   alleged above with respect to the AC System Defect.

23        269.    Plaintiffs and Class Members unknowingly conferred a benefit on GM of which

24   GM had knowledge, since GM was aware of the defective nature of the Class Vehicles' AC

25   Systems, but failed to disclose this knowledge and misled Plaintiffs and Class Members regarding

26   the nature and quality of the Class Vehicles while profiting from this deception.

27        270.    The circumstances are such that it would be inequitable, unconscionable, and

28   unjust to permit GM to retain the benefit of profits that it unfairly obtained from Plaintiffs and

1  Class Members. These profits include the premium price Plaintiffs and the Class paid for the

2  Class Vehicles and the cost of the parts and services bought from GM to temporarily fix AC

3  System.

4      271.   Plaintiffs and Class Members, having been damaged by GM's conduct, are entitled

5  to recover or recoup damages as a result of the unjust enrichment of GM to their detriment.

6  **RELIEF REQUESTED**

7      272.   Plaintiffs, on behalf of themselves, and all others similarly situated, request the

8  Court to enter judgment against GM, as follows:

9      a.   an order certifying the proposed Class, designating Plaintiffs as named

10 representatives of the Class, and designating the undersigned as Class Counsel;

11     b.   a declaration that the AC Systems in the Class Vehicles are defective;

12     c.   a declaration that GM is financially responsible for notifying all Class

13 Members about the defective nature of the Class Vehicles;

14     d.   an order enjoining GM from further deceptive distribution, sales, and lease

15 practices with respect to the Class Vehicles;

16     e.   an order requiring GM to permanently repair the Class Vehicles, within a

17 reasonable time period and at no cost to Class Members, so that they no longer possess the AC

18 System Defect;

19     f.   an award to Plaintiffs and Class Members of compensatory, exemplary,

20 and statutory damages, including interest, in an amount to be proven at trial;

21     g.   a declaration that GM must disgorge, for the benefit of Plaintiffs and Class

22 Members, all or part of the ill-gotten profits it received from the sale or lease of the Class

23 Vehicles, or make full restitution to Plaintiffs and Class Members;

24     h.   an award of attorneys' fees and costs, under Cal. Code Civ. Proc. § 1021.5,

25 15 U.S.C. § 2310(d)(1), and as otherwise allowed by law;

26     i.   an award of pre-judgment and post-judgment interest, as provided by law;

27     j.   leave to amend this Complaint to conform to the evidence produced at trial;

28 and

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

1         k.    such other relief as may be appropriate under the circumstances.

2         **<u>DEMAND FOR JURY TRIAL</u>**

3         273.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury

4 of any and all issues in this action so triable of right.

6 Dated:    December 19, 2017      Respectfully submitted,

9         By: _____

               Jonathan D. Selbin

10         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

11         Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com

12         275 Battery Street, 29th Floor
San Francisco, CA 94111

13         Telephone:    (415) 956-1000
Facsimile:    (415) 956-1008

15         Mark P. Chalos (admitted *pro hac vice*)
mchalos@lchb.com

16         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650

17         Nashville, TN  37219-2423
Telephone:    (615) 313-9000

18         Facsimile:    (615) 313-9965

19         Annika K. Martin (admitted *pro hac vice*)
akmartin@lchb.com

20         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor

21         New York, NY 10013-1413
Telephone:    (212) 355-9500

22         Facsimile:    (212) 355-9592

23         Patrick Newsom (admitted *pro hac vice*)
patrick@brunonewsom.com

24         BRUNO NEWSOM PLLC
40 Music Square E.

25         Nashville, TN 37203
Telephone:  (615) 251-9500

26         Facsimile:    (615) 345-4188

27         *Attorneys for Plaintiffs and the proposed Class*

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

1381385.2

1

**CERTIFICATE OF SERVICE**

2

   I, Annika K. Martin, hereby certify that on this 19th day of December, 2017, I

3

electronically filed **AMENDED CLASS ACTION COMPLAINT** and its Exhibits A through D

4

with the Clerk of the United States District Court for the Northern District of California using the

5

CM/ECF system, which shall send electronic notification to all counsel of record.

6

   I declare under penalty of perjury that the foregoing is true and correct.  Executed in New

7

York, New York on December 19, 2017.

8

9

_____

10

Annika K. Martin

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED CLASS ACTION COMPLAINT
3:17-CV-5864-WHA

1381385.2